**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARY BELLO, | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. RDB-24-3672 |
| LUMINIS HEALTH, INC., | * | |
| *Defendant.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

In this employment suit, Plaintiff Mary Bello ("Plaintiff" or "Bello") claims that her employer, Luminis Health, Inc. ("Luminis"), discriminated against her on the basis of her alleged disability when it terminated her employment on April 4, 2022. She originally filed this five-count Complaint in the Circuit Court for Anne Arundel County, Maryland. (ECF No. 1 ¶ 1.) Bello's Complaint alleges wrongful discharge pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12117 (Count One); failure to accommodate under the ADA (Count Two); wrongful discharge pursuant to the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601 *et seq.* (Count Three); failure to accommodate under the same law (Count Four); and interference with rights protected by the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (Count Five). *See generally* (ECF No. 2). Luminis removed the case to this Court pursuant to 28 U.S.C. § 1441 and § 1446, invoking this Court's subject matter jurisdiction in light of the federal statutory claims alleged. (ECF No. 1.)

1

Now pending is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 22). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.[1] The Court has reviewed the parties' submissions; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, Defendant's Motion for Summary Judgment (ECF No. 22) is GRANTED.

## BACKGROUND

"[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### I.     Factual History

Defendant Luminis Health, Inc., is a non-profit hospital offering specialty care, community outreach, and research. (ECF No. 25-1 ¶ 2.) The hospital formed in 2019 as a result of the merger of Doctors Community Medical Center and Anne Arundel Medical Center. (ECF No. 22-7 ¶ 3.) Luminis Health Clinical Enterprises is a division of Defendant comprising all Defendant's physician practices. (*Id.*)

Plaintiff Mary Bello began working for Luminis (at that time, Anne Arundel Medical Center) as a Physician Liaison in or around July 2009.[2] (ECF No. 25-1 ¶ 1.) Although she held different positions over her tenure with Defendant, she worked for the company continuously

---

[1] The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Counts One and Two as those claims arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12117, and over Count Five, which arises under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. The Court exercises supplemental jurisdiction over the state law claims in Counts Three and Four as those claims are so related to the federal counts that they can be said to form the same "case or controversy." 28 U.S.C. § 1367.

[2] Although the name of Bello's employer changed in 2019, the record reflects that her employment was uninterrupted by the merger of Anne Arundel Medical Center and Doctors Community Medical Center and formation of Luminis. *See* (*id.*).

from July 2009 until her termination on April 4, 2022. Specifically, after working as a Physician Liaison, Bello was promoted to Manager of Physician Relations at some time in 2015. (*Id.*)

On September 17, 2019, Bello was involved in a car accident, in which she received a concussion. (ECF No. 22-2 at 16–17.) A report dated September 30, 2019, written by Stephan Kurylas, MD, diagnosed Bello with post-concussion syndrome resulting from the crash.[3] (ECF No. 25 at 12.) She claims that, because of the accident, she suffers permanent injuries, including vision impairment and difficult with short-term memory, auditory processing, balance, sleep, manual tasks, and working. (*Id.* at 17.)

In February and March of 2020, she discussed leave and accommodation options, including the process to apply for FMLA leave, with Sharon Borland, Luminis's Employee Relations Manager. (ECF No. 22-2 at 19–21.) Defendant's accommodation and leave process is managed by The Hartford Group, a third-party. (ECF No. 22-5 at 3.) To start the process of requesting an accommodation or leave, an employee must submit a request directly with The Hartford, which then handles the necessary medical certification and approval process. (*Id.* at 3–4.) Luminis is only notified that a request for leave or accommodation has been made by an employee after a claim has been formally opened by The Hartford. (*Id.* at 6.) Bello testified that she began an application for FMLA leave in March of 2020, but never completed it. (*Id.* at 22.) She ultimately never applied for any accommodation or leave in 2020. (*Id.*)

At some point in 2020, Bello began reporting to Defendant's Chief Operating Officer, Peter Odenwald. (*Id.*) On May 13, 2021, Odenwald promoted her to Senior Manager, Provider

---

[3] Bello's Response in Opposition contains multiple doctor's notes and reports. *See generally* (ECF No. 25-2, ECF No. 25-3, No. 25-4, No. 25-5). At multiple points in its briefing however, and as further explained below, Luminis does not contest the existence of injuries or ongoing side effects related to Bello's car crash. *See, e.g.*, (ECF No. 22-1 at 25 ("Mr. Odenwald was aware of [Bello's] alleged disability and its symptoms at the time he began her supervision [in 2020].")).

Engagement.[4] (*Id.*) Bello was the only person in this role. (ECF No. 22-2 at 6.) She remained in the position until her termination on April 4, 2022. (*Id.*) The parties agree that, as Senior Manager, Provider Engagement, Bello's duties included developing relationships with physicians in the community to support specific areas of need, like oncology, women's health, behavioral health, and orthopedics. (ECF No. 22-2 at 4; ECF No. 22-1 at 9.) The position also required her to create, implement, and manage a comprehensive marketing strategy aimed at physicians to increase referrals to Luminis's own doctors. (ECF No. 22-2 at 7–8; ECF No. 25 at 11.) Luminis contends that this position became "increasingly critical" in 2019 and beyond, as it "was essential to integrate and grow the physician community" after the merger of Anne Arundel Medical Center and Doctors Community Medical Center. (ECF No. 22-1 at 10.)

Odenwald conducted Bello's 2020 performance review. (ECF No. 22-2 at 10–12.) In that review, he noted that Bello provided certain areas of improvement for her own performance in the following year. (*Id.* at 11.) Those included "[d]eveloping data driven outreach plans"; "[e]stablishing standardized work to support" specific hospital needs; and "[i]mplementing a cost-effective [customer relationship management software]." (*Id.* at 12.) Customer relationship management ("CRM") software permits a company to organize and track current and potential engagements with physicians. (ECF No. 22-1 at 11.) Luminis contends that CRM software "would provide [Luminis's] physician engagement team a repository of physicians that they would meet with," document any discussions with physicians, and track any commitments made. (*Id.*) By the time Bello was terminated on April

---

[4] Bello refers to this position as Senior Manager of Physician Relations. (ECF No. 25-1 ¶ 1.) There is no indication in the record that these are different roles. For the purposes of clarity, the Court uses the term Senior Manager, Provider Engagement, as that title is reflected at numerous points in the record. *See, e.g.*, (ECF No. 22-2 at 6).

4, 2022, she had selected to use Salesforce CRM, but that system was not operational yet.[5] (ECF No. 22-2 at 13.) Luminis's corporate designee, Mitchell Schwartz, testified that the delay in having an operational CRM had a negative impact on the company. (ECF No. 22-4 at 6, 9–10.)

Odenwald also conducted Bello's 2021 performance review, dated October 19, 2021. (ECF No. 22-2 at 14–15.) He gave her an overall rating of "Improvement Required." (*Id.* at 15.) He noted that she "struggle[d] with focusing on goals and specific objectives," despite having what he characterized as a very important role within the company. (*Id.* at 15–16.) Odenwald also stated that Bello's role "demand[ed] the ability to work independently, which she did during the height of COVID." (*Id.* at 16.)

Separately, around this same time, Odenwald was receiving complaints about Bello from other employees, including Charlene Harrison, Defendant's Vice President of Women and Children's Health. Harrison testified that there were often serious delays associated with Bello helping her group with physician outreach and management. (ECF No. 22-6 at 4–6.) Additionally, Luminis expected Bello to build relationships with a group of gastroenterology doctors. Defendant claims that Bello did not meet the expectations for fostering those relationships and that, as a result, other employees had to conduct outreach on her behalf. (ECF No. 22-7 ¶¶ 6–8.)

Bello continued to work full-time for Luminis as Senior Manager, Provider Engagement until June of 2021. In May 21, 2021, she requested time off, indicating that she needed time off to rest her brain, which she had never done after her September 2019 car

---

[5] The record reflects that the CRM software became operational on April 18, 2022. (ECF No. 22-2 at 13.)

accident. (*Id.* at 22.) She hoped to get two weeks off, at least. (*Id.* at 23.) Defendant permitted her to take that time off. (*Id.*)

In June of 2021, Bello began using paid-time off to work a shortened schedule of three days per week, typically working Tuesday, Wednesday, and Thursday. (*Id.* at 23–25.) This arrangement came after a discussion between Bello and Odenwald concerning her ability to take FMLA leave. (*Id.* at 25–26.) She indicated that she knew FMLA leave was available, but that she preferred to "shorten her schedule instead." (*Id.* at 26.) In August of 2021, she began an application for intermittent leave under the FMLA. (*Id.* at 27–28.) The Hartford denied that request because Bello did not complete the required medical certification. (*Id.* at 28) During that time, Luminis did not object to Bello using her paid-time off to work only three days per week. (*Id.* at 30.) She further testified that Defendant did not require her to use paid-time off, and that doing so was her choice. (*Id.* at 38.) Odenwald, Bello's supervisor, testified that he did what he could to take care of Bello, including cancelling meetings or not asking Bello to travel on Mondays and Fridays, as per her requests of him. (ECF No. 22-3 at 22–23.)

In January of 2022, Bello provided Natasha Hillsman, Luminis's Human Resources Director, with a letter from her physician at the Brain Injury Clinic of National Rehabilitation Hospital, Heechin Chae, MD, which recommended that she work three days per week. (ECF No. 22-2 at 33.) The letter makes no other recommendation or accommodation request. (*Id.* at 34.) On January 10, 2022, Bello advised Hillman by email that she would contact The Hartford to request FMLA leave. (*Id.* at 37) She stated that she had "stubbornly resisted FMLA and an abbreviated work week, but it's past time" (*Id.*) Hillman responded, "Let's talk on Monday. I want to help you navigate through all of this. Let me know if you need the

information to apply for FMLA." (*Id.* at 39, 71.) Bello responded, "Monday would be great. I have the FMLA info and will call [The Hartford] Monday AM [*sic*]." (*Id.*) Bello did not contact The Hartford to apply for leave at any point in January or February of 2022. (*Id.* at 40.) Later, on March 7, 2022, she began an application with The Hartford for FMLA leave, but had not completed it when she was terminated on April 4, 2022. (*Id.* at 43–44.) Luminis contends that Hillsman never received any notice of FMLA leave request from The Hartford regarding Bello.

Ultimately, on April 4, 2022, Odenwald informed Bello that Luminis had terminated her. (ECF No. 22-3 at 4.) During that meeting, Odenwald gave Bello a letter detailing Defendant's reasons for termination. (ECF No. 22-3 at 29–30.) Those stated reasons included: (1) not having been able to "demonstrate over the last several months that [she was] providing the leadership and guidance around Physician Engagement," including not having implemented a CRM system; (2) an inability to "define, establish criteria, and select [a CRM] product"; (3) not having met "any goals" that aligned with "the departmental vision"; and (4) an inability to improve her "performance activity." (*Id.* at 29.) Odenwald's letter concludes by stating that Bello's actions "impede[d] departmental growth [and] prohibit[ed] the Provider Engagement team from meeting their goals." (*Id.*)

## II.     Procedural History

On December 6, 2022, Bello filed a charge of discrimination with the United States Equal Employment Opportunity Commission, which chose not to pursue a claim of discrimination on her behalf. (ECF No. 2 ¶ 12.) She received a Right to Sue letter from the Commission on July 30, 2024.[6] (*Id.* ¶ 13.)

---

[6] It is undisputed that Bello exhausted her administrative remedy requirements under the ADA.

On October 16, 2024, Bello filed this five-count suit against Luminis in the Circuit Court for Anne Arundel County, Maryland, which was removed to this Court pursuant to 28 U.S.C. § 1441 and § 1446.[7] (ECF No. 1; ECF No. 2.) Count One alleges wrongful discharge pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117. (ECF No. 2 ¶ 14–16.) Count Two is an ADA failure to accommodate claim. (*Id.* ¶¶ 17–20.) In Count Three, Bello claims wrongful discharge pursuant to the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't §§ 20-606 *et seq.* (*Id.* ¶¶ 21–23.) Count Four alleges failure to accommodate pursuant to that same Maryland law. (*Id.* ¶¶ 24–27.) Finally, in Count Five, Bello alleges intentional interference in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (*Id.* ¶¶ 28–30.)

Defendant filed an Answer on December 23, 2024. (ECF No. 6.) Nearly a year later, discovery closed on December 1, 2025. (ECF No. 21.) On January 15, 2026, Luminis filed the pending Motion for Summary Judgment (ECF No. 22).

## STANDARD OF REVIEW

To win summary judgment under Federal Rule of Civil Procedure 56, Luminis must show that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for

---

[7] Luminis invoked this Court's subject matter jurisdiction of 28 U.S.C. § 1331 and § 1367 in removing the case to this Court. (ECF No. 1.)

8

the nonmoving party." *Anderson*, 477 U.S. at 248. A party cannot create a genuine dispute of material fact through "mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 141 (4th Cir. 2008). If the moving party has carried its burden of showing that no material fact exists, then the nonmoving party must produce competent evidence to reveal the existence of a genuine dispute of material fact. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

When considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Anderson*, 477 U.S. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). This Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312. The Court is not permitted to make credibility determinations at the summary-judgment stage, as that is the role of the fact finder, as is the resolution of all factual disputes. *Tolan v. Cotton*, 572 U.S. 650 (2014). As such, "the plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990)).

## ANALYSIS

Counts One, Two, Three, and Fourt of Bello's five-count Complaint (ECF No. 2) allege wrongful discharge and failure to accommodate under both the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12117, and the Maryland Fair Employment

9

Practices Act, Md. Code Ann., State Gov't §§ 20-601 *et seq.* In Count Five, she alleges a claim of interference pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* As explained below, Luminis is entitled to summary judgment on all counts.

First, with respect to Counts One, Two, Three, and Four, the record reflects that Bello does not fall within the ADA's protected class, and so she cannot seek relief under the statute or its Maryland counterpart, the MFEPA. Second, even if Bello could show that she falls within the ADA's protections, summary judgment for Luminis is proper on her wrongful discharge claims in Count One and Three because she fails to create any genuine issue of material fact on the prima facie case of wrongful discharge. The same is true for Bello's claims of failure to accommodate in Counts Two and Four—even if she were able to invoke the ADA and its state corollary in this case, she would fail to raise any triable issue for a jury on the prima facie case. Finally, Luminis is entitled to summary judgment on Count Five as that FMLA claim is time-bared.

## I.      Eligibility for Relief Under the ADA (Counts One, Two, Three, and Four)

The parties agree that Counts One, Two, Three, and Four are all governed by the ADA, as the state claims in Count Three (Maryland wrongful discharge claim) and Count Four (Maryland failure to accommodate claim), are coterminous with their respective federal cause of action. *See Jones v. Cecil Cnty.*, RDB-23-2078, 2024 WL 1329269, at *3 (D. Md. Mar. 28, 2024) (internal citations omitted) (wrongful discharge); *Jenkins v. Univ. of Md. Cap. Region Health*, No. BAH-22-3108, 2025 WL 937606, at *9 n.15 (D. Md. Mar. 27, 2025) (internal citation omitted) (failure to accommodate). Luminis argues that it is entitled to summary judgment on all four

of these claims because Bello does not fall within the ADA's protected class. (ECF No. 22-1 at 18.)

To show that she falls within the ADA's protected class, a plaintiff must show that (1) she had a disability at the time of the adverse action; and (2) she was qualified to perform the essential functions of her position. *Young v. Austin*, RDB-21-880, 2021 WL 4820535, at *5 (D. Md. Oct. 14, 2021) (collecting cases). Luminis does not dispute that Bello had a disability at the time of her discharge on April 4, 2022. *See, e.g.*, (ECF No. 22-1 at 19). Instead, it argues that Bello was not a qualified individual. (*Id.*) A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(a)(8).[8] To survive summary judgment, Bello must raise a genuine dispute of material fact that, with or without a reasonable accommodation, she could have performed the essential functions of her role as Senior Manager, Provider Engagement. This analysis turns on "just what the essential function of the [job are]." *Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020). Importantly, "[a]n employer . . . is not required to reallocate essential functions" because "[t]he essential functions are by definition those that the individual who holds the job would have to perform, with or without reasonable accommodation, in order to be considered qualified for the position." 29 C.F.R. § 1630, App'x.

---

[8] The "essential functions" of an employment position are defined by regulation as the "fundamental job duties" of the position. 29 C.F.R. § 1630.2(n)(1). "A job function may be considered essential because, among other reasons, the position exists to perform that function, there are a limited number of employees to whom that function can be assigned, or the function is so specialized that the employee was hired specifically to perform it. *Hill v. Verizon Md., Inc.*, RDB-07-3123, 2009 WL 2060088, at *9 (D. Md. July 13, 2009); *see also* 29 C.F.R. §§ 1630.2(n)(1)–(n)(2) (providing factors for a court to consider when determining whether a job function is essential).

To determine a position's essential functions, a court considers the employer's judgment; the job description as it was communicated to applicants for the position; the amount of time that would be spent on any particular function; and the consequences of not requiring the employee to perform any particular function. *See* 29 C.F.R. § 1630.2(n)(3) (providing seven non-exhaustive categories). The record in this case reflects that the essential functions of Bello's position as Senior Manager, Provider Engagement were to engage physicians for the purpose of bettering referral relationships; develop a marketing strategy to hire new physicians; implement a CRM software; and aid Luminis executives across different areas of care with their engagement goals.

The record also indicates that Bello was unable to meet these essential functions with or without an accommodation. As Odenwald testified, she was "never successful at putting something together that could be followed through on and measured." (ECF No. 22-3 at 8.) He further testified that "she was very busy with activity but nothing that could advance [Luminis's] referral relationship[s]." (*Id.*) Bello herself testified that her concussion left her with problems with short-term memory, processing, and cognitive endurance. (ECF No. 22-2 at 17–18.) The record also makes clear that these problems continued even while Bello worked three days per week in June of 2021 and beyond, which was the only accommodation she ever sought. (*Id.* at 27–30, 71.) Accordingly, because the record in this case reflects that Bello was not able to complete the essential functions of her position even with an accommodation, she is not a "qualified individual" under the ADA and cannot bring claims pursuant to that statute. Accordingly, Luminis's Motion for Summary Judgment (ECF No. 22) is GRANTED as to Counts One, Two, Three, and Four.

## II.    Wrongful Discharge (Counts One and Three)

Even if Bello were able to show that she was a qualified individual under the ADA, her individual theories of harm would still fall short. In Count One, Bello claims that Luminis wrongfully discharged her in violation of the ADA. (ECF No. 2 ¶¶ 14–16.) In Count Three, she raises the same claim, but under the MFEPA. (*Id.* ¶¶ 17–20.) As the parties agree, the analysis of these wrongful discharge claims collapses into the ADA analysis. *Jones v. Cecil Cnty*, RDB-23-2078, 2024 WL 1329269, at *3 (D. Md. Mar. 28, 2024) (internal citations omitted).

To survive summary judgment on a claim of wrongful discharge under the ADA, a plaintiff must show that: (1) she is within the ADA's protected class; (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances raising a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001) (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995)).

The third element requires a plaintiff to put forward evidence that she was doing her job "well enough to rule out the possibility that [s]he was fired for inadequate job performance, absolute or relative." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515 (4th Cir. 2006) (internal citations and quotations omitted). Bello has not produced any such evidence. The record reflects that in her 2021 performance review conducted by Odenwald, Bello received an overall rating of "Improvement Required." (ECF No. 22-2 at 15–16.) Odenwald testified to the same. Mitchell Schwartz, Luminis's corporate designee, also testified that Bello was not meeting Luminis's expectations. (ECF No. 22-4 at 14 (calling some of Bello's performance "a complete

failure of that job").) Accordingly, there is no genuine issue of material fact as to the third element of the prima facie case. This alone would be sufficient to enter summary judgment for Luminis on Counts One and Three.

Bello, however, has also not raised any genuine issue of material fact as to the fourth element of causation. As this Court has previously noted, a plaintiff's disability must be a "but-for" cause of her termination. *Jackson v. Sprint/United Mgmt. Co.*, 633 F. Supp. 3d 741, 748 (D. Md. 2022) (quoting *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235–36 (4th Cir. 2016)). There is simply nothing in the record in this case which could raise a reasonable inference that Bello was terminated due to her disability.

In her Response, Bello argues that "Defendant's stated performance concerns were merely a pretext to conceal the true reason": Bello's "intention to take leave related to her disability." (ECF No. 25 at 27.) Relatedly, she claims pretext based on temporal proximity between her March 7, 2022, contact with The Hartford and her April 4, 2022, termination. (*Id.*) There is nothing in the record, however, that supports these inferences. Indeed, the record reflects that multiple Luminis personnel, including her supervisor, Odenwald, and Hillsman, consistently attempted to help Bello deal with her alleged disability. To be specific, Hillsman told Bello by email on January 22, 2022, "I want to help you navigate through [the FMLA process]. Let me know if you need information to apply for FMLA." (ECF No. 22-2 at 71.) Furthermore, Bello's initiation of an FMLA leave application with The Hartford on March 7, 2022, did not create any knowledge on the part of Luminis. Bello told Hillsman in January of 2022 that she intended to take leave, but there is nothing in the record which shows that Hillsman or any other Luminis ever learned of Bello's March 7, 2022, contact with The

Hartford. Indeed, Luminis contends that Hillsman did not know of this. Nothing in the record creates a genuine issue of material fact as to causation. Accordingly, Bello fails to state a prima facie case on this element of the claim. Just as with the third element, this alone would be sufficient to enter summary judgment for Luminis on Counts One and Three.

In sum, even if Bello were able to show that she meets the standards of a qualified individual under the ADA, Luminis would still be entitled to judgment as a matter of law because there are no genuine disputes of material fact and Bello cannot meet the requirements of the third and fourth elements of the prima facie case.

Moreover, even if Bello could satisfy the elements of the prima facie case of wrongful discharge, summary judgment for Luminis would nevertheless be proper. At the summary judgment stage, if an employee has made out a prima facie case of ADA discrimination, the employer must then produce evidence that there was a legitimate, non-discriminatory reason for the discharge.[9] *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)). This is a burden of production, not persuasion. *Reeves*, 530 U.S. at 142. If the employer meets this burden, the employee must then prove by a preponderance of the evidence that the legitimate reasons offered by the employer were pretext for discrimination. *Id.* at 143.

Luminis has offered a legitimate, non-discriminatory reason, supported by ample record evidence, for terminating Bello: her deficient performance as Senior Manager, Provider

---

[9] This burden-shifting framework stems from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Although *McDonnell Douglas* involved alleged discrimination violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, its test is applied with equal force in ADA discrimination cases. *Neal v. E. Carolina Univ.*, 53 F.4th 130, 135 (4th Cir. 2022). While the burden of production shifts between the parties at each step, the ultimate burden of proving discrimination remains always with the plaintiff. *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 175 (4th Cir. 2024) (internal citation omitted).

Engagement. (ECF No. 22-1 at 26–27.) As the record makes quite clear, however, Bello cannot prove by a preponderance of the evidence that Luminis's legitimate, non-discriminatory reason for terminating her was mere pretext. Accordingly, even if she could make out a prima facie case, which she cannot, summary judgment would still be proper for Luminis.

### III.  Failure to Accommodate (Counts Two and Four)

Count Two alleges that Luminis failed to accommodate her in violation of the ADA. (ECF No. 2 ¶¶ 21–23.) Count Four alleges that the same conduct was a failure to accommodate under the MFEPA. (*Id.* ¶¶ 24–27.) Just as for wrongful discharge, these claims may be analyzed together under the ADA standard because the two statutes are "coterminous." *Jenkins v. Univ. of Md. Cap. Region Health*, No. BAH-22-3108, 2025 WL 937606, at *9 n.15 (D. Md. Mar. 27, 2025). Again, Luminis is entitled to summary judgment on these claims because Bello is not a qualified individual under the ADA. Even if she were, however, summary judgment would still be proper for Luminis because Bello cannot make out a prima facie case of failure to accommodate.

To survive summary judgment on a claim of failure to accommodate under the ADA, a plaintiff must establish that (1) she is an individual with a disability within the meaning of the statute; (2) her employer had notice of the disability; (3) that with reasonable accommodation she could perform the essential functions of her role; and (4) that the employer refused to make the accommodations. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12111(8)). In this case, and for the reasons already discussed, Bello's claim of failure to accommodate would fail because Luminis never refused

to make an accommodation. Quite simply, there is no evidence in the record that Bello requested an accommodation and that Luminis refused it.

### IV.   FMLA Interference (Count Five)

In Count Five, Bello alleges that Luminis violated the Family and Medical Leave Act by interfering with her rights under that statute.[10] (ECF No. 2 ¶¶ 28–30.) Luminis is entitled to summary judgment on this claim because it is time-barred by the FMLA's statute of limitations.

The statute of limitations for a claim under the FMLA is two years, but a three-year limitations period applies when the alleged violation was willful. *Id.* § 2617(c)(2). A violation is "willful" if the employer "'knew or showed a reckless disregard [as to] whether its conduct was prohibited [by the FMLA].'" *Shipton v. Balt. Gas & Elec. Co.*, 109 F.4th 701, 709 (4th Cir. 2024) (quoting *Settle v. S. W. Rodgers Co.*, 182 F.3d 909 (4th Cir. 1999) (unpublished)). "To raise a genuine issue of material fact, the Plaintiff must present some evidence of 'willfulness' through depositions, affidavits, answers to interrogatories, or admissions on file." *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 583 (D. Md. 2010) (quoting *Washington v. Purdue Farms, Inc.*, No. 07–3552–TLW–TER, 2009 WL 386926, at *8 (D.S.C. Feb. 13, 2009)).

Bello filed this suit on October 16, 2024 (ECF No. 1 ¶ 1), more than two-and-a-half years after Luminis terminated her on April 4, 2022 (ECF No. 2 ¶ 11; ECF No. 22-1 at 12). Luminis argues that it is entitled to summary judgment on this Count because it is time-barred by the FMLA's statute of limitations. Bello argues that the three-year limitations period applies

---

[10] The FMLA entitles an eligible employee to "a total of [twelve] workweeks of leave during any [twelve]-month period for . . . a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). Employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by [the statute]." *Id.* § 2615(a)(1).

to her case because Luminis willfully violated the FMLA by terminating her because it did so in a way that interfered with her ability to take leave. (ECF No. 25 at 34 (citing 29 U.S.C. § 2617(c)(2).) Specifically, she claims in her Response that Luminis terminated her with the knowledge that she "intended to apply for and take [FMLA] leave." (*Id.*)

To survive summary judgment on this claim, Bello must create a triable issue of fact on the three-year limitations period. Doing so requires her to produce competent record evidence both that Luminis violated the FMLA in that it interfered with her ability to take leave and that it did so willfully. If she is unable to create a triable issue of fact as to either of these issues, the two-year statute of limitations applies and Luminis is entitled to summary judgment on Count Five.

First, Bello has not produced competent record evidence to survive summary judgment on the existence of an FMLA violation. As Bello alleges that Luminis interfered with her statutory rights, she must show that "(1) [s]he is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 495 (D. Md. 2013)). Bello claims that Luminis interfered with her FMLA rights in that it terminated her employment on April 4, 2022, after she told Hillsman that she intended to apply for medical leave in January of 2022. (ECF No. 25 at 34.) To be clear, Bello never actually completed any application for FMLA leave. The record indicates that Luminis was never actually aware of any *completed* request for FMLA leave because, at the time it terminated Bello on April 4, 2022, no such completed request existed. As Luminis aptly notes

in its briefing on this issue (ECF No. 22-1 at 34), "an employee cannot buy [her]self unqualified job protection by notifying the employer that [s]he may take FMLA leave at some point in the future." *Gill v. Genpact, LLC*, No. 17-cv-633, 2017 WL 5319938, at \*8 (E.D. Va. Nov. 13, 2017). There is simply no record evidence indicating that Luminis or any of its employees interfered with Bello's ability to take medical leave. Quite to the contrary, the record shows that multiple Luminis employees, and most importantly Natasha Hillsman, attempted to help Bello apply for FMLA Leave.

In sum, Bello has failed to create any triable issue of the existence of a violation or willfulness on the part of Luminis. Accordingly, Bello's FMLA claim is subject to the two-year statutory period. Bello filed her claim more than two years after the putative violation. Count Five is therefore time-barred. Luminis's Motion for Summary Judgment (ECF No. 22) is GRANTED as to Count Five.

## CONCLUSION

For the reasons stated above, Luminis's Motion for Summary Judgment (ECF No. 22) is GRANTED.

A separate Order follows.

Date: May 8, 2026

          /s/

Richard D. Bennett
United States Senior District Judge